UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
RAMONE DEWAR, UNIQUE GARCIA,
TEVON THOMAS, ANTONIO PARRIS,
and SADE AVIS,

                            Plaintiffs,

    -against-

                                            **COMPLAINT**

THE CITY OF NEW YORK, RICHARD DEE,
PETER CARRETTA, GILBERT BARKMAN,
TIMOTHY SHERIDAN, JOEBIAN ORTIZ,

                                            **PLAINTIFFS DEMAND**
                      Defendants.           **A TRIAL BY JURY**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

       Plaintiffs Ramone Dewar, Unique Garcia, Tevon Thomas, Antonio Parris, and Sade Avis, by their attorneys, Lumer & Neville, as and for their Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

       1.    At all times hereinafter mentioned, plaintiff Ramone Dewar was an adult male resident of Kings County, in the State of New York.

       2.    At all times hereinafter mentioned, plaintiff Unique Garcia was an adult male resident of Kings County, in the State of New York.

       3.    At all times hereinafter mentioned, plaintiff Tevon Thomas was an adult male resident of Kings County, in the State of New York.

       4.    At all times hereinafter mentioned, plaintiff Antonio Parris was an adult male resident of Kings County, in the State of New York.

5. At all times hereinafter mentioned, plaintiff Sade Avis was an adult female resident of Kings County, in the State of New York.

6. At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

7. At all relevant times hereinafter mentioned, defendant Richard Dee was employed by the City of New York as a member of the NYPD with the rank of Captain, or higher, and assigned to Brooklyn South Gang Squad ("BSGS").  Defendant Dee is sued herein in his official and individual capacities.

8. At all relevant times hereinafter mentioned, defendant Peter Carretta was employed by the City of New York as a member of the NYPD with the rank of Lieutenant, or higher, and assigned to Brooklyn South Gang Squad ("BSGS").  Defendant Carretta is sued herein in his official and individual capacities.

9. At all relevant times hereinafter mentioned, defendant Gilbert Barkman was employed by the City of New York as a member of the NYPD with the rank of Sergeant, or higher, and assigned to Brooklyn South Gang Squad ("BSGS").  Defendant Barkman is sued herein in his official and individual capacities.

10. At all relevant times hereinafter mentioned, defendant Timothy Sheridan (Tax 894360), was employed by the City of New York as a member of the NYPD

with the rank of Detective, or higher, and assigned to Brooklyn South Gang Squad ("BSGS"). Defendant Sheridan is sued herein in his official and individual capacities.

11. At all relevant times hereinafter mentioned, defendant Joebian Ortiz (Tax 894360), was employed by the City of New York as a member of the NYPD, or higher, and assigned to Brooklyn South Gang Squad ("BSGS"). Defendant Sheridan is sued herein in his official and individual capacities.

12. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

13. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

**RELEVANT FACTS**

14. On April 13, 2011, at about 5:00 p.m., each of the plaintiffs were lawfully present inside of a residence on or near East 56th Street and Avenue H in Brooklyn, New York.

15. At this time, the defendants arrived in several NYPD vehicles, entered the premises with guns drawn, and seized each of the plaintiffs.

16. During the course of the arrest, plaintiff Parris was kicked in the face. This gratuitous use of force was carried out without justification or necessity.

17. Dee was the supervising officer on the scene. Carretta was the second-

in-command on the scene, and Barkman was the third-in-command.

18. None of the plaintiffs were engaged in any unlawful or suspicious activity.

19. Although there was no legal basis to seize the plaintiffs, defendants handcuffed the plaintiffs and took them into custody.

20. The defendants searched the plaintiffs, or caused them to be searched. The searches yielded no evidence of guns, drugs, or any other contraband.

21. Despite the absence of any evidence of wrongdoing on the part of the plaintiffs, the defendants formally arrested the plaintiffs, as well as numerous other individuals.

22. The decision to arrest the plaintiffs was objectively unreasonable under the circumstances.

23. Sheridan was the arresting officer for each of the plaintiffs. These arrests were made with the knowledge and approval of each of his three supervising officers, Dee, Carretta, and Barkman.

24. Defendants then took the plaintiffs to a local area station house where they were held for a period of time. The plaintiffs were eventually transferred to Kings County Central Booking, where they was held for many more hours before they were each arraigned.

25. While plaintiff was in defendants' custody, Sheridan drafted paperwork concerning plaintiffs' arrests. In this paperwork, Sheridan falsely claimed, in part, that these

plaintiffs had possessed marijuana and/or a stun gun.

26. This claim by Sheridan was materially false, as plaintiffs had not actually or constructively possessed any of this contraband, as Sheridan was well aware.

27. Sheridan then forwarded, or caused to be forwarded, these false statements of fact to the Kings County District Attorney ("KCDA") in order to justify the arrests and to persuade the KCDA to commence the plaintiffs' criminal prosecutions.

28. As the supervising officers on the scene, Dee, Carretta, and Barkman were aware that defendants lacked probable cause to arrest the plaintiffs, but permitted their arrests anyway.

29. Each of these three supervising defendants was aware that, as the arresting officer, Sheridan would be forwarding factual statements about the circumstances of the arrests to the KCDA in order to justify the arrests and to persuade the KCDA to commence criminal prosecutions of the defendants.

30. At no time did Sheridan take any steps to intervene in, prevent, or otherwise limit the harms caused by his false statements he had made or to limit the consequences thereof.

31. At no time did the other defendants take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in by Sheridan, and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required, and at no time did any of these defendants make any effort of any sort to notify the KCDA of the absence of probable cause

to arrest these plaintiffs or the falsity of Sheridan's statements.

32. Each of the plaintiffs agreed to accept an Adjournment in Contemplation of Dismissal at the arraignment, and the criminal charges were subsequently dismissed.

33. At no time did there exist any basis to utilize any level of force against the plaintiff, much less the force actually employed, nor could any of the defendants have reasonably believed that such force was necessary.

34. At no time prior to or during the encounter was there probable cause to arrest the plaintiffs.

35. That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

36. Plaintiffs repeat the allegations contained in paragraphs "1" through "35" above as though stated fully herein.

37. The individual defendants willfully and intentionally seized, searched, detained, and arrested the plaintiffs without probable cause, and without a reasonable basis to believe such cause existed.

38. The defendants fabricated evidence through the false statements of Sheridan to the effect that the plaintiffs were found to be in possession of marijuana and/or

a stun gun, and forwarded these to the KCDA, causing plaintiffs to be denied their liberty.

39. By so doing, the individual defendants, individually and collectively, subjected plaintiff Parris to excessive force, and each of the plaintiffs to false arrest and imprisonment, unlawful searches of person and property, and the denial of due process through the fabrication of evidence, and thereby violated and aided and abetted in the violation of the plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.

40. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused the plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

41. Plaintiffs repeat the allegations contained in paragraphs "1" through "40" above as though stated fully herein.

42. Defendant City of New York was responsible for ensuring reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

43. Sheridan's actions in this matter – condoned by the other individual defendants – were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

44. More precisely, under this policy or plan, officers within the Gang

Division (of which the defendants' Brooklyn South Gang Squad is a subdivision) would knowingly make arrests of individuals regardless of whether there was any factual basis for the charges. The arresting officer(s) would then make false statements of fact as to seeing the individual(s) being arrested in actual or constructive possession of the contraband in question.

45. The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

46. In addition, members of the Gang Division are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria. Thus, members of the Gang Division routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

47. The NYPD generally, and BSGS in particular, tracks the number of arrests made by each officer but does not take into account the outcome of these arrests, even though this information is available to the NYPD. As a result, members of the Gang Division are well aware that (a) they are being evaluated based on, in large part, the number of arrests made, and (b) their supervisors do not care whether these arrests lead to criminal prosecutions, much less convictions.

48. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused the plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## THIRD CAUSE OF ACTION

49. Plaintiffs repeat the allegations contained in paragraphs "1" through "48" above as though stated fully herein.

50. Defendant City of New York had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority with respect to abusing their arrest powers. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

51. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

52. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers.

53. The failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

54. The official policies, practices and customs of the City of New York and the NYPD alleged herein violated plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States.

55. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures, and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD

56. Therefore the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of the plaintiff's rights in particular.

57. By reason thereof, defendant has violated 42 U.S.C. §1983 and caused the plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

i. on the first cause of action, actual and punitive damages in an amount to be determined at trial;

ii. on the second and third causes of action, actual damages in an amount to be determined at trial;

iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

iv. such other relief as the Court deems just and proper.

Dated: New York, New York
April 14, 2014

LUMER & NEVILLE
Attorneys for Plaintiffs

By: /s/ Michael Lumer

Michael Lumer, Esq.
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060